Case number 20-5284 Shandan Panda et al. Appellants versus Michael R. Pompeo, Secretary, U.S. Department of State et al. Mr. Forney for the appellants, Mr. Glover for the appellees. May I please the court, Jeffrey Forney on behalf of Shandan Panda and other appellants. Each plaintiff in this case is the beneficiary of an approved skilled worker H-1B petition or a derivative, a family member who's been had been residing in the and working in the United States for in many cases in many years in H-1B status. And many of those plaintiffs have approved permanent labor certifications certified by the Department of Labor after their employers tested the domestic labor market for their jobs. And they've, for that reason, started the permanent, the process for gaining permanent residency in the United States. But Proclamation 10052 undoes all of those settled administrative determinations. It negates those determinations by displacing the detailed and reticulated statutory framework governing the employment of the plaintiffs in H-1B status. The proclamation doesn't simply supplement the statute. It negates the H-1B program, which the Department of State then subsequently under the proclamation redefined contrary to statute by imposing novel criteria on the program, further preventing plaintiffs from coming back to the United States to rejoin their family members or take up prior existing employment relationships with their employers in H-1B status. Now, the proclamation stepped into a space that Congress already addressed with respect to the H-1B program. And for that reason, the proclamation transcends the limitations that were set out in Trump v. Hawaii. And accordingly, the plaintiffs have a cause of action to challenge the proclamation as ultra-various under this court's decision. Well, counsel, you got to remember now, we're not talking about just statute versus proclamation because the proclamation is based on a statute and the statutory authority given. And the question is whether or not the statutory authority given in F can be squared with the preexisting statutory authority. I mean, it's not, you're framing your argument as if to suggest the president is acting against a statute. The president is acting pursuant to a statute. He's acting pursuant to 8 U.S.C. 1882 F. That's exactly right. All right. I mean, you can't, both in the prior case and in this case, you can't forget that there is presidential authority. The question is whether it fits. You can't assume that the prior visa provisions are the only things on the book. They're not. The F provision is on the book as well. And it says the president can find that the entry of aliens or any class of aliens would be detrimental to the interest of the United States. And the Supreme Court has said that is broad authority. And assuming there's no unlawful delegation thing, you have to square it up. You can't just assume that what the president has done is non-statutory as against the provisions covering visas. That's not accurate. Okay. But that wasn't what I was arguing. Well, that's the way it's coming across. And that's what I've been concerned about. The president is acting pursuant to statutory authority. So where has he gone off base? He's gone off base by entering a proclamation that was entered under 212 F. We understand that, but it then runs up against another statutory provision, which Congress, excuse me, several other statutory provisions that are interlocking and reticulated that specifically address and resolve the issue that the proclamation now overrides, expresses. That in Trump v. Hawaii, the Supreme Court said they would assume that could not be done. And that's what's happening here. Basically, the president issued a proclamation that negated the H-1B program and eliminated it. He then subsequently, of course, handed it off to the Department of State and authorized them to come up with exceptions. But what they did in coming up with those exceptions is they completely redefined and revised the H-1B program to make it appear as something completely contrary to what Congress crafted in a very detailed fashion in a number of interlocking and related statutes. And that's the problem here. That's the statutory violation. It isn't that there wasn't a triggering mechanism. Of course, we understand there's 212 F allows the president to do certain things, but it has limits. It isn't limitless. Those limits were set out by the Supreme Court in Trump v. Hawaii. But not in 212 F. 212 F just says, would be detrimental to the interest of the United States. Can you imagine anything that might be detrimental to the interest of the United States that would run against what has already been provided in H-1B and H-2B? There might be something. Not where you're repeating or overriding. I understand that argument because we've discussed it in the prior case, but where the president says, I'm aware of those provisions, but given this circumstance that we now face, it's so bad, it's detrimentally interesting in the United States. And therefore I am suspending what H-1B and H-2B, based on my authority under 212 F. I don't know if that's not a perfectly reasonable argument. Well, there's two problems. One more generally, the Supreme Court said in Trump v. Hawaii that the president could not enter an area and countermand what Congress had already, the space in which they had already resolved that issue. If the fact that the president is pointing to has not been considered by Congress, the president is saying what I'm looking at now is detrimental to the interest of the United States. And a way to fix it, at least in part, is to suspend the visa provisions. And I have that authority by statute. I'm not going to redo what those visa provisions say, except I'm not going to let them be in play. But I have that authority under the statute. Otherwise, what does the statute mean? If it's detrimental to the interest of the United States, don't make it this case. I'm just trying to see how far you go. And I hear what you're saying about Trump, but I'm not sure that's really answering it. Suppose it's a circumstance that's just detrimental to the United States that has not been addressed by Congress specifically. Oh, well, then that's fine under Trump v. Hawaii. No, wait, no, no, not been addressed. It's been addressed in the H-1B and H-2B provisions. Yes. Not otherwise. Can't the president go- Right, but our case, maybe, I'm sorry, I didn't make that clear in my opening statement, but all of the plaintiffs appellants in this case, in our case, in the Panda case, are H-1B workers. Full stop. We're not concerned about any other programs in our case. Okay. We're concerned about what the president did with respect to the H-1B program and negate that program and prevent the entry of the plaintiffs in our case who have longstanding relationships and ties to the United States through family and employment relationships. They have employers with whom they've been employed as H-1B employees, some of them for many years. And on that basis, many of them have gone through the permanent labor certification process. Suppose the president found, and it was more than plausible. Don't forget the facts of the case for a minute. It was more than plausible that continuing with the H-1B program at this moment in our history will seriously exacerbate unemployment in the United States and cause us serious economic harms. And you couldn't really, you couldn't beat us. So you're arguing to us, we have findings that are sufficient to show that they will seriously exacerbate unemployment in the United States and affect our economic condition. You mean to say you couldn't do that under the statute? Not the way the statute's written currently. Couldn't do it. Really? Well, you're not actually presenting a hypothetical with respect to the H-1B program. That's what the president has done in this case. He's overridden and completely negated the H-1B program. What I'm trying to, you all are debating whether or not he has findings to support the supposition that there is an effect on unemployment. I'm sorry. I'm sorry. That's not our case, your honor. Oh, you don't? No, I agree. I thought that was important there. No, I agree with the findings with respect to the H-1B program as set out in the proclamation contradict the Bureau of Labor Statistics. So you have one part of the government contradicting the other, but that's not our case. We're not contesting the factual findings. That's just, we're saying this is just a flat contradiction to the statute, the H-1B program, and that the president has just negated that program and he cannot do that under Trump VOI. That's our argument. I'm just looking at the language. I'm out of time. Well, let me just ask you one question. The statute says, I'm looking at 1182F, right? Whenever the president, he makes his findings, he made a proclamation in this suspend the entry of all aliens or any class of aliens. Suspend. Isn't that what he's essentially done here? No, he has not suspended. He's basically negated the program. He's made it so the program doesn't exist despite the fact that there were already certifications done by the Department of Labor and all of our plaintiffs had approved petitions that were entered by the Homeland Security. I understand. Thank you. I don't have any further questions. All right. So I'm out of time unless there's any other questions from any other judges. What is it? Tell me again, the language in Trump that you think makes it dispositive, even though he finds something that's detrimentally interesting to the United States, he can't suspend, not eliminate, suspend the H-1B visa. So there's, so there's two sections. Study from Trump v. Hawaii, 138, Supreme Court at 2411. There's a provision there where the Supreme Court indicated that we may assume that 1182F does not allow the president to expressly override particular provisions of the INA. And then relatedly, later on, on page 2412. 2411 was the first one? Yes. And then secondly, at 2412, a little further down, the Supreme Court said that they would allow the proclamation in that particular case that involved, of course, factual findings about whether there were terrorism-related grounds for excluding particular foreign nationals. The Supreme Court said that this is not the Congress has stepped into the space and solved the exact problem. And quote, but that's exactly what happened here. Congress did step into the space and spoken very detailed and interrelated manner through several statutory provisions scattered throughout the INA that relate directly to the H-1B program. Well, the thing that's so weird, see the thing that's so weird when you say that is that Congress has stepped into this space too, the 12F space. And they said, when the president finds that the entry of aliens or any class of aliens, any class would be detrimental to the interests of the United States. So Congress has stepped into all of these spaces. And it looks like the 12F is a larger authority than the, of the H-1B, but you want to credit H-1B as being superior. And I'm not sure why. Judge Tatel's question to me suggests suspension is not elimination. Suspension is suspension. And it's very different from expiring something you, you asserted in very strong terms. No, he's just eliminated. No, he suspended it. But I'm not understanding how you're squaring the statute and the two provisions that you're citing. I don't know how they, what was the second page you gave? 2412, 138th Supreme Court 2412. All right. I'm looking at it. And how far down is it? The paragraph beginning where? Paragraph beginning Congress's decision to authorize. 2412. We must be looking at different pages. I have no such paragraph on 2412. I'll look for it later. It's the pagination cuts the paragraph in half. So I'm sorry that the paragraph begins on, that the end of 2411 continues on to 2412, but the particular quotations So does the paragraph start, if anything, the drafting history suggests the opposite? How does your paragraph begin? Okay. I'm sorry. My paragraph begins, it's on 2411. It begins at the end of 2411. It continues on to 2412, right? Okay. So it starts Congress's decision. Correct. All right. Well, I would say that if, if going to judge Edward's point that if, if 1182 F is, is basically supersedes everything else, which only, only if the condition has been satisfied, the finding condition has been satisfied. Okay. But then we still need to deal with the statement in Trump v. Hawaii that says, we may assume that 1182 F does not allow the president to expressly override particular provisions. Well, that's still the question, at least the question open. That's why we're asking you this. It doesn't just assumes it. But I think, but I think as you, I'm sorry, but I think it's true. In that case, the Supreme Court went on to say, you know, that no conflict had been identified. That's true. But I think as one of your honors pointed out in the last panel, this is a lower court and you have to follow what the Supreme Court, I mean, even if it's just suggested. We don't have to make an assumption. No, we don't have to make an assumption that the Supreme Court says we're bound by the Supreme Court says we're going to assume a, because we can decide to base the case on the basis of B, we're still free to decide. Hey, that's open. Well, well, if you're saying that the antecedent was assumed without deciding, which appears to be in this case, it's still strong dicta. And I think there's, it isn't dicta. It's just an assumption. That is, I would say where Congress has stepped into the space and solved the exact problem. Hasn't solved the exact problem that we're talking about now. But it has, it's solved the exact problem. No, it isn't. No, no, detrimental to the interest of the United States. In the prior case, the prior case, it was an apparent overlap because they had, you can argue they had in a way dealt with detrimental interest to the United States with respect to unemployment. So you could make the argument there. You're making a much more sweeping. You're saying F just doesn't exist in so far as one B is concerned. And we're right. But I, but I think you, I think your honor made the point in the last panel, which is that it's natural interest is the trigger. Okay. That's fine. Right. But Congress already addressed that natural interest in this case regarding H the H one B program, because it listed the conditions for domestic employment. You're arguing. That's why I focused on the word suspend and see, and you seem to be arguing it differently. That's why I've stopped and started pressing you, but go ahead. All right. Okay. We're done. All right. Council. Thank you. We'll give you a couple of minutes in rebuttal. So council for our police. Thank you. Good morning again. I'm Matthew Glover and I represent the United States. I'm picking up off of some of the discussion that the court just had with Mr. Forney. I would emphasize that 1182 F talks about suspending. And what the president has done here is impose limitations. In addition to those that exist in the INA, he has tied them temporally to the pandemic. And as the Supreme court noted in Hawaii, the 43, we still have the, we still have the finding problem. Your honor. I think all this takes care of all this takes care of. I'm not saying it does, but your argument is okay. There's no override problem, but you still have a finding issue. And I'm not, you still have to have a finding. Yes. And, and the proclamation includes findings, including mentioning H one B and J. But that's, that's not the question. The question is, are they, are they adequate findings? Yeah. So the Supreme court pointed out that it's not a searching inquiry. And just to clarify what I, what I may have mistakenly said previously, the government's position is that all of these findings are clearly factually accurate. These are predictive judgments. And so I understood the hypothetical about something false to be, if the president, you know, used incorrect math or something clearly demonstrably false, then you might say that the findings fall short, even under the Supreme court's limited inquiry under Hawaii. But as the Supreme court noted, whether the president's chosen method of addressing the perceived risks, just as justified from a policy perspective, that's irrelevant to scope of his 1182 F authority. And so here, you're talking about predictive findings about the labor and labor economics. And if I could give, you know, imagine Congress passed a statute in the middle of COVID-19 saying, given the pandemic we're repealing, or we're, you know, barring entry under these classifications for a certain period of time, because we know we make the findings the president's made here on, on a rational basis review. I think that would clearly pass muster as a statute, the president has done at least that. And a number of prior proclamations have included very, very limited findings. The president, you know, had fairly fulsome findings here. I think the arguments attacking the findings that point that petition plaintiffs, I be clear that in the manufacturing case, the statement was made that the government had conceded that all the facts findings appear in the proclamations that it's not as in Hawaii, where they had this study. Your honor, if I could clarify, in Hawaii, the proclamation discussed a study and DHS and other agencies doing that here, the president cites to, and I'll get the the secretaries of labor and Homeland Security quote, found that the present admission of workers within several non immigrant visa categories also poses and he's talking also because he was talking about his prior proclamation also poses a risk of displacing and disadvantaging United States workers during the current recovery. And then he goes on to say American workers compete against foreign nationals for jobs in every sector of our economy, including its millions of aliens United States to perform temporary counsel. I know that. But it's not as though there's a footnote or anything citing on what basis he says the secretaries say this, but on the basis of what? Your honor, I think this goes to the Supreme Court's language in Hawaii that the president is not required to connect every dot or two. No, this is not connecting dots. This is I have two secretaries who made these findings. I have two secretaries that made these recommendations. And I find the president's the one making the finding for purposes of 212 F. But your honor, I had a casual 5pm cocktail hour, the secretary said, Oh, yes, Mr. President, you ought to issue these proclamations. That's very different than what the Supreme Court had in Hawaii. I'm just trying to understand, because in the last argument, you mentioned they're all these, it's all this evidence, but then on rebuttal, counsel said, but the government had conceded that all the evidence on which the government is relying is included in the proclamation. So let's assume that the secretaries made these recommendations. Suppose just suppose that there's no basis for these recommendations. That's one. And two is that literally, my hypothetical is correct, that the secretaries did make these recommendations at a 5pm cocktail hour. So your honor, 212 F requires the president to make a finding. In Hawaii, there was similar arguments made that the president hasn't shown his work, and the secretaries haven't shown their work. The court not only rejected that argument, but it noted that in the 43 prior proclamations, or many of them, it could be as limited as a paragraph or a couple of sentences that were finding hypothetical. I think the finding needs to be contained in proclamation. That's what I understand Hawaii to say. Here we have findings in the proclamation that are sufficient. The president has made predictive findings related to labor economics and the labor market in light of this unprecedented. I mean, in Hawaii, that the Supreme Court just ignored the study. I'm not saying that the Supreme Court ignored the study. I'm saying the Supreme Court was clear that inciting to other proclamations that had limited findings without, you know, putting forward the background evidence. I just want to be clear where the government is on that. The government's position is that the proclamation itself must include the finding. Your honor, I would need to see the finding in the proclamation in your hypothetical. I apologize if I forgot. My hypothetical is the two secretaries at a 5 p.m. cocktail hour recommended the president issue a proclamation barring immigration, period. And that's what the proclamation states? The proclamation states exactly what it states here. The two secretaries recommended. I think that the context in which the Supreme Court was dealing in Hawaii was so different. It doesn't necessarily mean that it fails here, but it was a very different. The court didn't need to have any doubts about was this a 5 p.m. cocktail, casual recommendation or not. This thing has been studied elaborately. Your honor, the purpose of 1182 F is to allow the president to react to, you know, wars, pandemics, sudden, you know, responses. And it doesn't matter if the president acted on the basis of a 5 p.m. cocktail, casual recommendation. If the president had the exact same findings he has here, the test in Hawaii is looking at the findings that are in the proclamation because that's the sole prerequisite for it. And these findings are clearly in excess of many of the others. If I could give one example of Proclamation 65. I know, but counsel, you know, the weight of something and the fact that you have, you know, a thousand findings that are all irrational, that doesn't help your case. I'm just trying to understand what you understand. The Congress intended when it said the president must find. That he needs to act because failing to do so. By proclamation would be detrimental to the interest of the United States. So Congress said whenever the president finds the entry of aliens or any class of aliens, the United States would be detrimental to the interests. He may not, you know, issue a proclamation. I think Hawaii pointed out that this exudes deference. It grants sweeping authority, whether to suspend entry, whose entry to suspend. You're not going to answer my question. I've asked it three different ways. And you don't want to answer it. And that's fine. But I just want to be clear that the government has not addressed this question. All right. It doesn't want to address this question. And I think that's relevant to how our limited review is conducted. Let me have one more attempt and cut me off. The government's position is that you don't look behind the finding. And when you're conducting the Hawaii 212 F analysis, you don't look behind the finding that's on the face of the proclamation. And so in your hypothetical, you had the same findings here. Those findings should be upheld. And the findings are often much more limited than what we have here. You know, Hawaii noted, you're not required to sort of spell out every discussion. The stat, I'm trying to think if there's anything else I'd like to hit, you know, as to the discussion about something being clearly false. These are predictive findings. They are not clearly false. And the president is making judgments about what he thinks the labor market would be appropriate. And I think this goes to the questions Judge Edwards had for plaintiff's counsel about being aware of the H1B and H2B, but determining in light of the current factual situation that, you know, admission of those aliens is detrimental. I see that I'm- Yeah, but doesn't the court say we would be concerned if you have these statutory provisions and you're using F to step into a space and solve a problem that has already been addressed by Congress? But F is designed for, you know, unexpected change circumstances. No, no, no, but we've gone through this again before. I don't want to do it again, but I just want you to understand my concern. You stepping into a statutory space, the exact, it's something like into the space and solve the exact problem. And if the reason given is unemployment, both, and that's the only thing we're talking about. And that's what the detrimental to the interest of the United States is about. That has been addressed in 1B and 2B because there are certification procedures that address that. So that's the strange thing. I think you agree that if, I think you can tell me if you don't agree, that if what the president is doing is invoking F to step into a space that has already been handled by Congress, then we got a concern. No, I think F provides the president assuming that he makes findings and you have this, you know, a suspension. It's a suspension. It's not a permanent bar to add to the prior requirements. And so I would disagree. We think F, which exudes categories. But then what you're really effectively doing is saying for those two categories where you're arguing they're adding two. So your findings have to deal with that too. The unemployment has already been addressed in the 1B and 2B categories. Congress has explained how that should be handled. Wait a minute. You're saying, but the president's invoking F now because there's an even greater unemployment problem of some sort. And, and that causes us to wonder, well, where, where has that finding been made? What's the greater because 1B and 2B address unemployment as it might, or displacing American workers that might be a threat to the American economy because there's an arrangement to deal with it. So how can you use F to step into that space that's been dealt with? Because you're reacting to an unforeseen circumstance. The president discusses unemployment in light of the COVID-19 sort of impact on the labor market. And we think just like with the certification procedure would take that all into account because you have to certify no one's available. There's a temporal lag in the certification procedure that there's the exception. So we're coming back. Your argument, your argument, at this temporal lag argument, because Trump does express concerns about dealing with the exactly the same space. In other words, it's kind of like a normal statutory interpretation. If you're dealing with a space that's already been dealt with by Congress, then we have to worry a little bit about your using F to kind of override something. And Congress didn't give you the authority to do it. And your answer to that is no, no, no. They didn't really deal with it because now there's a temporal lag that's not going to address our concern here. I also have a textual answer. And I know I gave this before, so I'll make it briefly. And it's just that when in 1182F they allowed suspending all or classes of aliens, that would include in situations where you suspend a class of aliens based on a classification or a visa classification. Or if you suspend all aliens because of concerns about labor or concerns about communicable diseases with COVID-19, there's already an exclusion provision in, I think, 212A5. The Ninth Circuit discusses this in Doe. And I think I didn't get to this particular example, but 212FA4 or 5 allows you to suspend people because of concerns about communicable diseases or not being immunized. I don't know which is which. And as the Ninth Circuit pointed out in Doe, you're still allowed to suspend in pandemic, even though we have concerns about immunization or concerns about communicable diseases, 212F still gives additional authority to suspend in a space that Congress has already addressed. In the proclamation at Doe, it had to do with the public charge rule having a provision about health care. So we think 212F gives the president broad authority. It exudes deference in every clause. And he needs to make a finding based on the situation. And I apologize. I know I'm over time. Okay. I don't have any more questions. Council, did you have anything you needed to add? No. As in the prior case, I'd be happy to talk about the non-delegation issue, but I'm also happy to rest on our... Oh, sorry. I have a question. Let me be clear. Yes. You'd be happy to rest on your brief as to non-delegation? Yeah. Yes. I just want to have that in the record. All right. So Judge Tatel has a question. Yeah. So maybe you can help me, Mr. Forney. Your Honor... Before this morning... David, who are you talking to now? We're speaking with council for the government now. Oh, I'm sorry. I thought we had switched. Excuse me. Not yet. Sorry. Thank you. If there are no further questions, we would ask that you affirm in both cases. I think I can. Council for appellate. Now you can ask, David. Okay. Now I'm going to ask you my question. So... Wait, you're going dead. Wait. Council's going dead again. Can you hear me now? Yeah. Okay. Yeah. Yeah. Okay. All right. So the way I had been thinking about this before this morning, before the oral argument was, as I looked at the finding question, your argument, as I understood it was, is that the finding here is false because with respect to HB1 visa holders, the statute itself provides protection for the U.S. labor market, right? Right. But the statute says... It says the president may... If he finds it's detrimental, he may, by proclamation, and for such period of time, suspend the entry. So why isn't the way to look at this to say, yes, Congress created... Let's just talk about HB1. That's it for the time being, okay? Because that's what this is about. So Congress created this provision that allows people with HB1 visas come in if it's certified properly. That is, if the certification... If the employer has a certification that it won't adversely affect domestic workers, fine. But what this says, this is kind of an override. This is giving the president authority, if he makes this finding, to suspend that provision. Why isn't that the way to look at this statute? It's not an override. He's simply suspending it because of unforeseen serious circumstances that the United States falls... Finds itself in right now. So in other words, what I'm saying is, as you think about whether the findings are adequate, I'm no longer sure you can take account of the fact that the statute, the INN statute, already protects the domestic employment market or domestic workers because all he's doing is suspending that provision. Is that... Do you see what I'm saying? I probably didn't say it very clearly, but what's your answer to that? I take the distinction to be drawn, which is, if I understand your question, is the distinction between overriding a statute, eliminating a program, and simply suspending it. Suspending it, yeah, right. Well, what's the answer? Well, I guess... Therefore, how can... In other words, how can his finding be false if your argument for it being false rests on the existence of the HB1 program's protection from domestic workers? Because all he's doing is suspending it. He's not overriding it. So therefore, the question is... The question is, has he given an adequate reason? Let's set aside the standard of review, but has he provided information to suggest that the HB1 program is not adequately protecting domestic workers because of the unusual circumstances the United States finds itself in? That's my question. Okay. I think there's two points here. One is that with respect to the H1B program, which is a skilled worker program in which Congress gave much more enhanced detail about how that program would operate than, for example, the H2B program, which is issued in the Gomez case, this has much more fulsome statutory provisions. 212N lays out in great detail the wages working conditions for those workers and the certification process. Yeah, sure. It's detailed, but the statute says he may, by proclamation and for such period of time as he deems necessary, suspend the entry of all entries or any class. So HB1. I'm just no longer confident in the way I was looking at this an hour ago. So can you help me regain my confidence? Tell me what's wrong with this doubt that I had. Well, I guess if you get into the granular detail, you should have significant doubt in how this was rolled out. The proclamation simply said, no entry, full stop, end the program with respect to people entering. No, no, no, suspend, suspend, suspend. I know, but it's basically eliminating with respect to those individuals. I think the reasoning of the NAM court was pretty clear on that, that it just simply for these classes of individuals, it's eliminated. But more specifically, the proclamation then handed this issue off to the secretary of state to publish exceptions under a national interest guideline. Those exceptions, which appear in the appendix 95 to 96, completely redefine the H1B program, impose conditions on it that Congress rejected, and transport other conditions from other visa programs and incorporate them into the H1B program and make them necessary conditions for obtaining a visa and re-entering the United States. So that's exactly how this thing was rolled out. Shows you that that's not a suspension. That was simply replacing the H1B program, redefining it, putting in criteria that other programs, and through the secretary of state's actions, turned it into something that it's not, and made those necessary conditions for individuals who were otherwise to be classified as H1B workers who had been approved by the Department of Labor and the Department of Homeland Security already, imposed new conditions, redefining that program and making those necessary conditions for their entry. That goes beyond suspension. That is recharacterization and I don't have any other questions. I don't. All right. Thank you, counsel, very much. We'll take the case under advisement. Thank you.
judges: Rogers, Tatel, Edwards